DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| JOHN WEBB, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TROY GIBSON and ALICIA GIBSON, )<br>)<br>Defendants. )<br>) | Case No. 3:18-cv-0036<br><br>ACTION FOR BREACH OF<br>CONTRACT, CONVERSION |

**JUDGMENT**

**THIS MATTER** is before the Court upon the motion of Plaintiff John Webb ("Webb") for default judgment against Defendants Troy Gibson and Alicia Gibson (collectively, the "Gibsons"), pursuant to Fed. R. Civ. P. 55(b). After careful review and consideration of the record, the Court finds as follows:

**I.**

This Court has admiralty and maritime jurisdiction over this case, pursuant to 28 U.S.C. § 1390. Venue is proper because the events giving rise to this claim occurred on St. Thomas, U.S. Virgin Islands. This Court has personal jurisdiction over the Defendants because each Defendant has transacted business in the Virgin Islands; contracted to supply services or things in the Virgin Islands; caused tortious injury by acts or omissions committed in the Virgin Islands; and contracted to insure real property located in the Virgin Islands. *See* 5 V.I.C. § 4903.

Webb is the sole member of Wreck Life Dive Center, L.L.C. ("Wreck Life"). *See copy of Corporate Documents: Articles of Organization and Operating Agreement*, ECF No. 43-1 at 4-5. Wreck Life is a limited liability company operating in the U.S. Virgin Islands, which is engaged in commercial diving, scuba diving, retail sales, scuba service, and boat charters. *See* ECF Nos. 43-1 at 4; 43-2 at 1, § A. On November 16, 17, and 18, Davis Marine Surveying and Adjusting ("Davis Surveying") issued Marine Survey Reports on Wreck Life's three vessels, assessing the value of "Going Hard," "Going Fast," and "Going Deep," to be $30,000, $135,000, and $35,000, respectively. (ECF No. 43-8 at 24-25, 35-37, 45-47.)

On or about November 23, 2016, Webb and the Gibsons entered into a Purchase of Business Agreement (the "Agreement"). *See Nov. 23, 2016 Purchase of Business Agreement*, ECF No. 43-2 at 15. The Gibsons contracted to purchase the business and assets of Wreck Life through a series of payments over time, and to act as manager of Wreck Life, for the benefit of Webb and Wreck Life, until the payments were made in full. *See* ECF No. 43-2. Wreck Life's assets included "[a]ll equipment used in carrying on the Corporation; [a]ll inventory and packaging; and [t]he goodwill of the Corporation including the business name." *Id.*, ¶ 1a. As equipment used to carry on the business of Wreck Life, the assets included three (3) motor vessels: 1) "Goin[g] Deep," a 25-foot C-Hawk Pilothouse Diesel; 2) "Going Fast," a 31-foot Island Runner Center Console; and 3) "Going Hard," a 36-foot Higgins LCVP Landing Craft. (ECF Nos. 43-2, ¶ 17.d; 43-8 at 1.)

The Gibsons agreed to purchase the assets and trade name of Wreck Life from Webb for a total purchase price of $250,000.00. (ECF No. 43-2, ¶ 3.) Defendants made an initial payment of $10,000.00 to Webb by November 4, 2016. They paid an additional $90,000.00 to Webb by December 1, 2016. The remaining balance of the purchase price—$150,000.00—was to be paid in monthly installments, beginning on January 1, 2017, and continuing over a three-year period. Monthly payments were to be made from the Gibsons to Webb in the following amounts:

- $1,500.00 per month for the first year, from January 1, 2017, until December 31, 2017;
- $2,000.00 per month for the second year, from January 1, 2018, until December 31, 2018;
- $2,500.00 per month for the third year, from January 1, 2019, until December 31, 2019; and
- a final balloon payment of $78,000.00 on January 1, 2020.

*See* ECF No. 43-2, ¶¶ 8-10, 37.

During the 3-year period that the Gibsons were making payments for Wreck Life's assets and trade name, they promised to manage Wreck Life. During the course of the managerial duties, and in accordance with the Agreement, the Gibsons were in charge of obtaining insurance for Wreck Life's assets, property, and business. *See id.*, ¶ 17.d. Their

insurance broker was Vicenia & Buckley, a Division of HUB International Insurance Services Inc., which issued three separate policies insuring against various losses to Wreck Life's assets and business, including but not limited to, losses caused by Windstorm, from June 30, 2017, until June 30, 2018. The first insurance policy was a Dive Center/Resort General Liability Policy, with a limit of $2,000,000.00, Policy # PPK1660491. ECF No. 43-3. The second was a Dive Center/Resort Property Policy, with a limit of $100,000.00, Policy # PPK1660488. *See* ECF No. 43-4. The final policy was a Dive Vessel Policy Form for Going Deep and Going Fast, with a total limit of $170,000.00, Policy # CUL 10941.077. *See* ECF No. 43-5.

On September 6, 2017, Hurricane Irma swept through the Virgin Islands destroying much of St. Thomas. The Gibsons filed claims of loss on behalf of Wreck Life under the existing policies. The Gibsons settled the insurance claims and accepted settlement payments under the policies. The Gibsons received insurance proceeds in the amount of $84,531.00 for loss of contents and loss of business income under Policy # PPK1660488, due to the damage caused by Hurricane Irma. *See Closed Claim Notification*, ECF No. 43-6. The Gibsons also received proceeds in the amount of $35,000.00 for the total loss of the vessel Going Deep, and $135,000.00 for the total loss of the vessel Going Fast, under Policy # CUL 10941.077. *See copy of Nov. 13, 2017 email from Austin Bourdreaux, Jr. to Julie Anderson and copy of issued checks*, ECF No. 43-7. The Gibsons further received insurance proceeds in the amount of $7,275.00 for salvage/wreck removal. *See id.* at 1. In total, the Gibsons received $261,806.00 on their claims on behalf of Wreck Life, *see id.*; ECF No. 43-8, ¶ 15, which they kept rather than depositing into Wreck Life's bank account.

Moreover, the Gibsons defaulted on the December 2017 payment under the Agreement and made no further payments to Webb. (ECF No. 43-8, ¶¶ 8, 11.) The Affidavit of John Webb verifies that the Gibsons still owed him $133,500.00 of the purchase price pursuant to the Agreement when they defaulted on their obligations and absconded from the Territory with the insurance proceeds. *Id.*, ¶¶ 17-18. As per the Agreement, the Gibsons' breach renders the Agreement null and void, and the Gibsons forfeit their right to any amounts paid to Webb. *See* ECF No. 43-2, ¶ 37 ("If three monthly payments are not received or are received after the fifth calendar day of the month[,] this Purchase Agreement is null and void and The Seller assumes Wreck Life Dive Center, L.L.C.")

On June 19, 2018, Webb filed the captioned action against the Gibsons. Webb properly served Troy Gibson and Alicia Gibson each with a summons and a copy of the complaint in this matter on August 7, 2018. (ECF Nos. 10, 11.) Although each initially appeared, neither Defendant filed an answer to Webb's complaint. On January 25, 2019, default was entered against the Gibsons for failure to answer, plead, or otherwise defend themselves in this matter. (ECF No. 38.)

On January 31, 2019, Webb, through counsel, filed a status report with the Court, representing that he had scheduled a telephonic meeting with the Gibsons for January 23, 2019, for which only Alicia Gibson appeared, *pro se*, speaking on behalf of herself and her husband. The status report also stated that Alicia Gibson represented that they had decided not to defend the lawsuit. The status report further stated that Alicia Gibson "indicated that she and Troy Gibson were adamant that they would not willingly pay any money to Plaintiff[s]." (ECF No. 39 at 1-2.)

Webb filed the instant Motion for Default Judgment on June 26, 2019, seeking damages for conversion in the amount of $261,806.00 in insurance proceeds, plus interest from the date of Judgment until full satisfaction. *Id.* at 11-12. Moreover, Webb requests an award of attorney's fees and costs incurred in this action for $14,600.90. *Id.* at 12. *See also Affidavit of Amounts Due*, ECF No. 43-10 at 1-2.

Neither Troy Gibson nor Alicia Gibson is an infant nor an incompetent person. *See* ECF No. 43-9 ¶ 5.

## II.

Pursuant to Federal Rule of Civil Procedure 55(b), Courts have discretion to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. *Anchorage Assoc. v. V.I. Bd. Of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). The Court accepts as true any facts contained in the pleadings regarding liability. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.")

Typically, a motion for default judgment must include evidence that all pleadings were properly served on the defendants; whether the defendants have appeared; that default was entered against the defendants; that the defendants are not infants or

incompetent; and indicating the amount of judgment and how it was calculated. *See Nationstar Mortg., LLC v. Florio*, No. CV 2012-0033, 2014 U.S. Dist. LEXIS 89339, at *3 (D.V.I. July 1, 2014). Where, as here, a defaulting defendant has appeared, the court need not conduct a hearing on the matter if the plaintiff's claim and supporting documents permit the court to calculate the amount of damages. *See Ins. Co. v. Cobb*, No. 1:11-cv-1877, 2012 U.S. Dist. LEXIS 90366, at *8 (M.D. Pa. June 28, 2012) ("Because Plaintiff's claim is supported by documents accompanying the motion, the Court finds that a hearing is not necessary under Rule 55(b)(2)(B)."); *Scarpone v. Dionisio*, No. 04-3140 (SRC), 2009 U.S. Dist. LEXIS 39676, at *2-3 (D.N.J. May 11, 2009) (citing *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("It was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.").

The Court of Appeals for the Third Circuit has stated that district courts must consider the *Chamberlain* factors in determining whether a default judgment should be granted: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

Here, the *Chamberlain* factors weigh in favor of granting default judgment. The Court first considers whether denying default judgment would prejudice the plaintiff. The Gibsons have demonstrated a lack of willingness to participate in the resolution of this matter, affirming they were not planning to take any action to defend in the matter, and being "adamant that they would not willingly pay any money to [Webb]." (ECF No. 39 at 2.) As such, the Court finds that Webb would be prejudiced by the Gibsons' failure to defend themselves in this matter, should default judgment be denied, because litigation would not be able to proceed without participation by the Defendants. Next, the Court looks at whether the Gibsons have a litigable defense and whether the Gibsons' delay is due to culpable conduct. Because the Gibsons have ceased participation in this matter, the Court cannot assess their defense or conduct. *Cobb*, 2012 U.S. Dist. LEXIS 90366, at *5 ("As to the second and third factors, because Defendants have failed to participate in the litigation process in any way, the Court cannot speculate as to whether Defendants have a litigable defense, or whether

*Webb v. Gibson et al.*
Case Number 3:18-cv-0036
Judgment
Page 6 of 9

Defendants' default is due to culpable conduct.") Accordingly, default judgment is warranted in this matter.

### III.

To prevail on a claim for breach of contract in the Virgin Islands, a plaintiff must demonstrate "(1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) [resulting] damages." *Aaron v. V.I. Government Hospital and Health Facilities Corp.*, 74. V.I. 222, 233 (V.I. Super. Ct. Mar. 8, 2021) (explaining that the elements "comport with the underlying purpose of contract law, which is to hold parties to their agreements so that they receive the benefit of their bargains") (citing *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 620 (V.I. 2017) (adopting the cited elements as "the soundest path forward" in the Virgin Islands)).

Webb's factual allegations in Count I, taken as true, support a claim for breach of contract. Webb has alleged that the Gibsons entered into a written Agreement for the purchase and sale of Wreck Life for a total purchase price of $250,000.00 on or about November 23, 2016, which was still in effect in September 2017, when Hurricane Irma caused substantial damage to the vessels and other assets of Wreck LIfe. (ECF Nos. 1, ¶¶ 11-20, 24, 28, 35; *see also* ECF No. 43-2.) Under the terms of the Agreement, Webb alleges that the Gibsons made an initial payment of $10,000.00 on November 4, 2016, another lump sum payment of $90,000.00 on December 1, 2016, and agreed to pay monthly payments for three years before making a final balloon payment of $78,000.00 on January 1, 2020. (ECF No. 1, ¶¶ 13-19; ECF No. 43 at 2.)

Webb further alleges that the sales agreement required the Gibsons to "act as manager of Wreck Life, for the benefit of Mr. Webb and the Company, until the payments were made in full," and that as part of this duty, the Gibsons renewed an insurance policy to insure the business and assets against losses such as those caused by Windstorm. *See* ECF No. 1, ¶¶ 7, 29; *see also* ECF Nos. 43 at 2-3; 43-8, ¶ 17.d.

As to the element of breach, the Parties agreed that the "Agreement is null and void and The Seller assumes Wreck Life Dive Center, L.L.C." if the Purchaser misses or is late in making three (3) months of payments. (ECF No. 43-2, ¶ 37.) Accordingly, Webb alleges the Gibsons breached the terms of the contract by failing to make monthly payments starting in

December 2017. (ECF Nos. 1, ¶¶ 24-27, 38-40; 43 at 4.) He further alleges that the Gibsons also breached the terms of the lease by failing to deposit into the business account the insurance proceeds from a claim for damages due to Hurricane Irma. (ECF Nos. 1., ¶¶ 29-33; 43 at 4.). As such, the Court finds that Webb has pled facts sufficient to establish that an agreement existed between Webb and the Gibsons that created a duty which was breached by the Gibsons, resulting in damages.

To prevail on a claim of conversion in the Virgin Islands, a plaintiff must establish "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Isaac v. Crichlow*, 63 V.I. 38, *59 (V.I. Super. 2015) (finding that the Restatement represents the soundest rule for the Virgin Islands);[1] *See* RESTATEMENT (SECOND) OF TORTS § 222A.

Here, too, Webb's allegations of fact establish the necessary elements of conversion. In his complaint, Webb alleges that the Gibsons obtained or renewed insurance for Wreck Life's assets, including the vessels, as they were required to do by the Agreement. (ECF Nos. 1, ¶ 45; 43 at 2-3.) After the hurricane damaged the vessels in September 2017, the Gibsons "submitted a claim of loss on behalf of Wreck Life." (ECF Nos. 1, ¶ 46; 43 at 3 ("Defendants filed multiple claims of loss on behalf of Wreck Life, under the existing policies.").) Webb further alleges that the Gibsons accepted a total settlement payment on behalf of Wreck Life in the amount of $261,806.00, "relinquished ownership of two of Wreck Life's vessels . . . without [Webb's] consent," and "failed to deposit the insurance proceeds into Wreck Life's bank account, or otherwise provide an accounting of the insurance proceeds to the Company or [ ] Webb." (ECF No. 1, ¶¶ 31-33.) *See* ECF No. 43 at 3-4. Accordingly, the Court finds that Webb has alleged facts sufficient to establish that the Gibsons intentionally exercised dominion or control over the Webb's chattel—the business assets of Wreck Life in the form

---

[1] The Superior Court of the Virgin Islands has found that the Restatement (Second) of Torts, § 222A, represents the soundest rule for the Virgin Islands for conversion. *Isaac v.* Crichlow, 63 V.I. 38, 59 (V.I. Super. Feb. 10, 2015). However, the Supreme Court of the Virgin Islands has not conducted a *Banks* analysis for conversion nor adopted that of the Superior Court. *Merchants Commercial Bank v. Oceanside Village, Inc.*, 64 V.I. 3, *31 (V.I. Super. Dec. 18, 2015).

of insurance proceeds—that so seriously interfered with Webb's right to control it that the Gibsons may justly be required to pay Webb the full value of the chattel.

Webb seeks damages for Defendants' conversion of the insurance proceeds in the amount of $261,806.00, plus post-judgment interest. Under the theory of conversion, "the key element in measuring damages . . . is the value of the product converted." *Knuth v. Erie—Crawford Dairy Cooperative Asso.*, 463 F.2d 470, 480 (3d Cir. 1972); *see also* RESTATEMENT (SECOND) OF TORTS § 222A ("In conversion the measure of damages is the full value of the chattel, at the time and place of the tort.")

Here, the November 16, 2016 Marine Survey Report assessed the value of the Going Fast as $135,000.00. (ECF No. 43-8 at 35-37.) Following Hurricane Irma, Davis Surveying assessed a Constructive Total Loss of the vessel, for a payout claim of $135,000.00, which was paid to the Gibsons. (ECF Nos. 43-7 at 8-10.) Likewise, the November 17, 2016 Marine Survey Report valued the Going Deep vessel at $35,000. (ECF No. 43-8 at 45-47.) Following Hurricane Irma's destruction, Davis Surveying assessed a Constructive Total Loss of the vessel, for a payout claim of $35,000, also paid to the Gibsons. (ECF No. 43-7 at 5-7.) Similarly, assessing the additional business loss at $84,531.00, insurance issued a payment in that amount to the Gibson. (ECF Nos. 43-6 at 1-2.) Payments for each of these claims were in full to the Gibsons, who did not deposit the proceeds into the Wreck Life bank account or otherwise provide the funds to Webb, as owner of Wreck Life. The Court thus finds that the Gibsons are required to pay Webb $254,531.00, for the full value of the converted chattel—the monetary proceeds from insurance for losses sustained from Hurricane Irma.[2]

Webb further seeks an award of attorneys' fees in the amount of $14,015.00, reflecting 51.00 hours of work expended by two attorneys and a paralegal, as well as costs in the amount of $585.90. (ECF No. 43-10 at 1-2.) However, Webb's motion does not provide authority to support such a request in a claim under admiralty or maritime jurisdiction. *See Sosebee v. Rath*, 893 F.2d 54, 56 (3d Cir. 1990) (concluding that because "[t]here is a strong interest in maintaining uniformity in maritime law" and attorneys' fees are not usually

---

[2] The insurance company additionally paid the Gibsons $7,275 for "wreck removal cost[s]." The wreckage has already been removed and its removal has been paid. Thus, this payment from insurance does not reflect the value of the chattel converted by the Defendants and will not be included in the calculation of damages.

available in maritime cases barring applicability of an exception, attorneys' fees should not be awarded under Title 5 of the Virgin Islands Code, section 541 in maritime cases); *see also Templeman v. Chris Craft Corp.*, 770 F.2d 245, 250 (1st Cir. 1985) (finding that a Puerto Rican statute allowing attorneys' fees generally should not be applied in admiralty actions). To the extent that Webb wishes to move for an award of attorneys' fees and costs, Webb shall, no later than fourteen (14) days after entry of this Judgment, file a motion pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, providing legal authority for such award under admiralty or maritime jurisdiction and 5 V.I.C. § 541.

The Court's factual findings establish that Plaintiff John Webb is entitled to default judgment against Defendants Troy Gibson and Alicia Gibson. Accordingly, it is hereby

**ORDERED** that, pursuant to Fed. R. Civ. P. 55(b)(2), the Motion for Entry of Default Judgment by Plaintiff Webb, individually and in his capacity as sole member of Wreck Life Dive Center, L.L.C., ECF No. 42, is **GRANTED**; it is further

**ORDERED, ADJUDGED, AND DECREED** that Plaintiff Webb is awarded final judgment against the Defendants Troy Gibson and Alicia Gibson for damages in the amount of $254,531.00; it is further

**ORDERED, ADJUDGED, AND DECREED** that Webb is entitled to interest on the total Judgment, pursuant to 28 U.S.C. § 1961, beginning from the date of Judgment until fully satisfied; and it is further

**ORDERED** that the Clerk of Court shall **CLOSE** this case.

**Dated:** March 31, 2022                                  */s/ Robert A. Molloy*
                                                                                    **ROBERT A. MOLLOY**
                                                                                     **Chief Judge**